Case 1:24-mj-00238-ZMF

Case: 1:24-mj-00238
Assigned To : Judge Zia M. Faruqui
Assign. Date : 8/5/2024
Description: COMPLAINT W/ARREST WARRANT

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Nicholas Sarno, being first duly sworn, hereby depose and state as follows:

**PURPOSE OF AFFIDAVIT**

1. I make this affidavit in support of an application for an arrest warrant for GREGORY PECK, JR.

2. Your affiant, ▓▓▓▓▓▓▓, is a Special Agent assigned to the Federal Bureau of Investigation's ("FBI") Charlotte Field Office. In my duties as a special agent, I am tasked with investigating matters related to terrorism. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a special agent, I am authorized by law or by a government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

3. The facts of this affidavit come from my review of the evidence, my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. This affidavit merely intends to show that sufficient probable cause exists for the requested warrants and does not set forth all of my knowledge about this matter.

**FACTUAL BACKGROUND**

4. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police ("USCP"). Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

5. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

6. As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and USCP were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

7. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of USCP attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the USCP, as others in the crowd encouraged and assisted those acts.

8. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the

joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

9. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

**FACTS SUPPORTING PROBABLE CAUSE**

*Identification of Peck*

10. After January 6, 2021, the FBI received information identifying Gregory Charles Peck Jr. as being involved in the Capitol riot. The individual alleged to be Peck appeared in Capitol surveillance footage and body-worn camera ("BWC") footage on restricted Capitol grounds.

11. After receiving the potential identification of Peck, the FBI queried law enforcement databases for a phone number associated with Peck. After identifying the phone number (XXX-XXX-2249), the FBI queried the Google geofencing data to determine if that phone number was included in the data. According to the records obtained through a search warrant served on Google, the cellphone number associated with Peck was present at the U.S. Capitol on January 6, 2021. Google estimates device location using sources including GPS data and information about nearby Wi-Fi access points and Bluetooth beacons. This location data varies in its accuracy, depending on the source(s) of the data. As a result, Google assigns a "maps display radius" for each location data point. Thus, where Google estimates that its location data is accurate to within 10 meters, Google assigns a "maps display radius" of 10

meters to the location data point. Finally, Google reports that its "maps display radius" reflects the actual location of the covered device approximately 68% of the time. In this case, Google location data shows that a device associated with Peck was present on U.S. Capitol grounds from approximately 3:06 p.m. and 5:44 p.m.

12. Additionally, open-source research returned a Facebook account that appears to be associated with Peck. On March 1, 2022, Peck posted a self-style picture of himself, which appeared to depict Peck on January 6th. Though the picture itself was posted in March of 2022, Peck is wearing the same attire that he wore on January 6th as seen in open-source videos/photos captured on restricted Capitol grounds. Specifically, Peck wore a black and grey baseball hat with a black Carolina logo and a blue crab overlaid, a multicolored gator around his neck, and a tan jacket over a black hooded sweatshirt.



*Figure 1: Picture Posted to Peck's Facebook Account (Peck Circled in Yellow)*

13. The FBI compared Figure 1 with Peck's North Carolina Department of Motor Vehicles driver's license photo, and they appear to depict the same individual. Additionally, FBI

interviewed two individuals who know Peck personally, who identified Peck in photos from January 6th.

### Peck's Participation on January 6, 2021

14. A review of BWC footage and open-source videos and photographs from January 6th show that Peck entered restricted Capitol grounds via the West Front.

15. While on the Southwest corner of the West Plaza, Peck used a flagpole with an attached yellow Gadsden Flag to hit Metropolitan Police Department ("MPD") Officer P.N. At approximately 2:31:58 p.m., Officer P.N.'s BWC captures Peck holding the flagpole in his right hand.



*Figure 2: Still from Officer P.N.'s BWC Showing Peck Holding Flagpole in his Right Hand*

16. Peck then raised the flagpole with his right hand and lifted the flagpole over another rioter's shoulder to hit Officer P.N. left arm, while another USCP Officer tried to push the rioters away from Officer P.N.



*Figure 3: Still from Officer P.N.'s BWC Showing Peck Holding Flagpole in Right Hand*

17. Further, while in the area of the Southwest Scaffolding, Peck was carrying what appeared to be a can of some sort of spray in his right hand.



*Figure 5: Open-Source Photo Showing Peck Holding Cannister*

18. While in that same area, Peck sprayed an officer with an orange substance.



*Figure 6: Open-Source Photo Showing Peck Spraying a USCP Officer*



*Figure 7: Zoomed in Version of Figure 15 Showing Peck Spraying (Outlined in Yellow) a USCP Officer (Outlined in Red)*

19. Peck made his way deeper into restricted Capitol grounds to the entrance of the Lower West Terrace tunnel. There, Peck grabbed MPD Officer B.M.'s jacket as Officer B.M. was dragged into the crowd by other rioters who were assaulting him.



*Figure 8: Still from Open-Source Video Showing Peck (Outlined in Red) Opposite Officer B.M. (Outlined in Yellow)*



*Figure 9: Still from Open-Source Video Showing Peck (Outlined in Red) Grabbing Officer B.M. (Outlined in Yellow)*

20. Peck grabbed Officer B.M.'s jacket collar from behind and pulled, causing Officer B.M.'s head to jerk back. Peck continued to hold Officer B.M.'s collar and when Officer B.M. appeared to have trouble breathing, another rioter shouted, "Let him breathe!" Throughout the video, multiple rioters are heard saying, "He can't breathe!" and "Let him go!"



*Figure 10: Still from Open-Source Video Showing Peck (Outlined in Red) Grabbing Officer B.M. (Outlined in Yellow)*

21. Peck released Officer B.M. but then grabbed him again and continued to hold onto Officer B.M. as other rioters tried to push Peck away. The other rioters continued to push away Peck and other individuals from Officer B.M.—appearing to try and protect Officer B.M. Ultimately, a couple of rioters pull Officer B.M. through a door that appeared to lead to an accessibility elevator built into the inauguration stage.



*Figure 11: Still from Open-Source Video Showing Peck's hand (Outlined in Red) Grabbing Officer B.M. (Outlined in Yellow)*



*Figure 12: Still from Open-Source Video Showing Peck's hand (Outlined in Red) Grabbing Officer B.M. (Outlined in Yellow)*



*Figure 13: Still from Open-Source Video Showing Peck (Outlined in Red) Grabbing Officer B.M. (Outlined in Yellow) from Behind*



*Figure 14: Still from Open-Source Video Showing Peck (Outlined in Red) Grabbing Officer B.M. (Outlined in Yellow) from Behind*



*Figure 15: Still from Open-Source Video Showing Peck (Outlined in Red) Behind Officer B.M. (Outlined in Yellow)*

22.     Based on the foregoing, your affiant submits that there is probable cause to believe that Gregory Charles Peck, Jr. violated 18 U.S.C. §§ 1752(a)(1), (2), and (4), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so

restricted in conjunction with an event designated as a special event of national significance. Your affiant further submits that there is probable cause to believe that Peck used or carried a deadly or dangerous weapon during and in relation to his violations of 18 U.S.C. § 1752(a)(1), (2), and (4), under 18 U.S.C. § 1752(b)(1)(A).

23. Your affiant submits there is also probable cause to believe that Gregory Charles Peck, Jr. violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Secret Service's protection of the Vice President and his family and the Capitol Police's protection of the U.S. Capitol.

24. Your affiant submits that there is probable cause to believe that Gregory Charles Peck, Jr. violated 18 U.S.C. § 111(a)(1) and (b), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties, while using a deadly or dangerous weapon or inflicting bodily injury. Persons designated within section 1114 of Title 18 include federal officers such as USCP officers, and include any person assisting an officer or employee of the United States in the performance of their official duties.

███████████████████████████
███████████████
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 5th day of August 2024.

_____
ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE